# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-12-00566-CR
## NO. 03-12-00567-CR

**Brian Jeffries, Appellant**

**v.**

**The State of Texas, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT**
**NOS. D-1-DC-12-202146 & D-1-DC-12-202147**
**HONORABLE BOB PERKINS, JUDGE PRESIDING**

## M E M O R A N D U M   O P I N I O N

A jury convicted Brian Jeffries of theft of property with a value under $1500, third offense, and evading arrest with a prior conviction for evading arrest. *See* Tex. Penal Code §§ 31.03(e)(4)(D) (establishing offense of theft of property with value under $1500 as state jail felony when defendant has two or more prior theft convictions), 38.04(b)(1)(A) (establishing offense of evading arrest as state jail felony when defendant has prior conviction for evading arrest). The jury found the enhancement paragraphs alleging prior convictions to be true and assessed punishment at four and a half years in the Institutional Division of the Texas Department of Criminal Justice for each offense. *See id.* § 12.425(a) (enhancing punishment to third-degree felony when defendant tried for state jail felony has two prior convictions for state jail felonies). On appeal, Jeffries asserts that the trial court abused its discretion by denying his request for self-representation. We will affirm the convictions.

## BACKGROUND

Jeffries requested appointment of counsel when he first appeared in court. Jeffries's original court-appointed attorney withdrew from representing him at a pretrial hearing three days before Jeffries's first trial setting. At the hearing, Jeffries accused the attorney of working for the State and not discussing motions with him. The attorney testified that Jeffries was unwilling to work with her on the case; she sought to withdraw based on his lack of cooperation with her.

The trial court appointed a new attorney for Jeffries, and the jury trial was reset for a date three weeks later. At a pretrial hearing four days before his second trial setting, Jeffries told the trial court that he wanted a different attorney because his second attorney had cursed at him. The trial court denied Jeffries's request. Jeffries suggested that instead he could represent himself. The trial court stated that even if he tried to represent himself, the trial court would still have his attorney sit with Jeffries during trial. The trial court also acknowledged that it would need to advise Jeffries about the disadvantages of self-representation and make an assessment of Jeffries's ability to represent himself. The trial court deferred the process of advising Jeffries about the risks of self-representation and assessing his ability to knowingly and intelligently waive representation until the day of trial.

On the morning of trial, Jeffries stated that he did not want to represent himself. He wanted another lawyer because his lawyer had "cursed [him] out" and he did not feel comfortable with his lawyer. When asked by the trial court to comment, Jeffries's lawyer stated:

> Mr. Jeffries is a liar. I'm his second lawyer. He got rid of [his prior appointed counsel] because he didn't like [her]. And he's trying to manipulate the system. He's trying to—he refuses to put on street clothes for trial. And this is another gambit to get out of trial.

2

. . . .

> There has [sic] been no problems except that he's refused to tell me what his name is or participate in any way, other than to threaten me. But we're ready.

The trial court then explained to Jeffries that mere disagreements between him and his lawyer or a personality conflict alone does not mean that the lawyer cannot represent him. The trial court denied Jeffries's motion for a new lawyer. Jeffries did not reiterate his request to represent himself. A lengthy exchange followed in which the trial court urged Jeffries to put on street clothes for trial and tried to ascertain whether Jeffries had received street clothes and refused to put them on, whether he had signed a refusal to change, and whether he still wished to stay in his jail uniform. After Jeffries refused to put on street clothes, the trial court proceeded with Jeffries's arraignment and with voir dire.

After the State's voir dire, but before the defense's, Jeffries complained to the trial court that his lawyer had not filed any motions and did not have any form of defense, so Jeffries thought he would be better off representing himself. The trial court told him that it was too late for him to represent himself because trial had started. Jeffries further asserted his desire to represent himself:

> THE DEFENDANT: I asked before I came in here. I asked for somebody—
>
> THE COURT: Well, and you said before trial that you wanted—that you did not want to represent yourself, that you wanted to have somebody else other than Mr. Esperson do that. I denied that. You didn't ask for another—for—to represent yourself then, so it's too late to do that now.
>
> THE DEFENDANT: So that's all I said—
>
> THE COURT: We'll stand in recess for a few minutes. Thank you.

3

| | |
|---|---|
| THE DEFENDANT: | So I want to represent myself. |
| THE COURT: | Well, it's too late to do that. You should've done that before trial. |
| THE DEFENDANT: | Really what y'all trying to do, man, is kangaroo-court me, man. |
| THE COURT: | No, that's not correct. We stand in recess for a few minutes. |

After the recess, Jeffries's counsel conducted voir dire examination. A jury was selected and sworn, and the case proceeded to trial.

## ANALYSIS

A defendant in a criminal proceeding has a constitutional right to represent himself if he makes the decision to do so intelligently, knowingly, and voluntarily. *E.g.*, *Faretta v. California*, 422 U.S. 806, 835 (1975); *Blankenship v. State*, 673 S.W.2d 578, 582 (Tex. Crim. App. 1984). The right to self-representation does not attach until it is clearly and unequivocally asserted by the defendant. *Brown v. Wainwright*, 665 F.2d 607, 610 (5th Cir. 1982) (discussing interplay between defendant's rights to counsel and to self-representation); *Funderberg v. State*, 717 S.W.2d 637, 642 (Tex. Crim. App. 1986). Moreover, a trial court may properly deny a request for self-representation if the record indicates that the request was made with the intent to disrupt or delay trial. *See Chapman v. United States*, 553 F.2d 886, 887 (5th Cir. 1977) (holding self-representation request timely if made before jury is selected, "absent an affirmative showing that it was a tactic to secure delay").

Although Jeffries asserts the trial court abused its discretion by denying his self-representation request on the ground that it was untimely, the timeliness of the request is not the

4

only factor that we consider when analyzing a defendant's request to proceed pro se.[1] We must also consider whether Jeffries's request was (1) clear and unequivocal or (2) made with the intent to disrupt or delay trial.[2] *See Funderberg*, 717 S.W.2d at 642; *Chapman*, 553 F.2d at 887. Since this is a mixed question of law and fact that turns on an evaluation of credibility and demeanor, we review the trial court's ruling for an abuse of discretion and afford almost total deference to the trial court's ruling. *See Chadwick v. State*, 309 S.W.3d 558, 561 (Tex. Crim. App. 2010). We view the evidence in the light most favorable to the trial court's ruling, and we will imply any findings of fact supported by the record and necessary to support the ruling when the trial court did not make explicit findings. *Id.*

We first examine whether Jeffries's request was clear and unequivocal. Jeffries first asked to represent himself four days before the trial setting, after the trial court denied his request for a third lawyer. The trial court deferred the required admonishment about the risks and disadvantages of self-representation until the day of trial and indicated that he would still have Jeffries's attorney sit with Jeffries as standby counsel during the trial. On the morning of trial, when the trial court asked Jeffries if he wanted to represent himself, he said he did not and asked again for a third attorney to be appointed. That same day, after the State completed its voir dire, but before Jeffries's attorney began his voir dire, Jeffries made another request to represent himself. Both of Jeffries's requests were made at the same time that he expressed dissatisfaction with his current

---

[1] The State concedes that Jeffries's request was timely and acknowledges that the trial court erroneously told Jeffries that his request made before the defense conducted voir dire was too late.

[2] We must uphold the trial court's decision if it was correct under any theory of law applicable to the case, even if the trial court gave an incorrect reason for its decision. *Jones v. State*, 982 S.W.2d 386, 389 (Tex. Crim. App. 1998).

5

attorney and only after the trial court denied his request for a different attorney. *See DeGroot v. State*, 24 S.W.3d 456, 458-60 (Tex. App.—Corpus Christi 2000, no pet.) (concluding trial court did not abuse its discretion by denying self-representation request made on day of trial when defendant had twice asked trial court for new counsel, request was made only after request for new counsel was denied, and statement was not consistent with other statements about desire to collaborate with defense attorney); *see also Renfro v. State*, 586 S.W.2d 496, 500 (Tex. Crim. App. 1979) (reversing and remanding case because defendant's decision to represent himself was based solely on court's refusal to appoint different counsel and not on desire to waive right to counsel). Based on Jeffries's vacillation and his repeated requests for a different lawyer, the trial court could have reasonably concluded that his self-representation request was equivocal and based only on the trial court's denial of his request for new counsel.

But even if we considered Jeffries's request to be clear and unequivocal, we would still be compelled to uphold the trial court's ruling if the trial court could have reasonably concluded that Jeffries made his request with the intent to disrupt or delay trial or that granting his request would actually disrupt trial. *See Chapman*, 553 F.2d at 895. The record suggests that Jeffries intended to delay or disrupt his trial. Jeffries asked to have a third attorney appointed to represent him and made his first request to represent himself only four days before his second trial setting. *See Blankenship*, 673 S.W.2d at 585 (noting that defendant had not requested different counsel when discussing lack of suggestion in record that defendant's self-representation request was designed to achieve delay); *Birdwell v. State*, 10 S.W.3d 74, 77 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd) (same). He made his second request to represent himself in the middle of voir dire after telling the trial court that morning he did not want to represent himself. Both of Jeffries's court-

6

appointed attorneys had advised the trial court that Jeffries would not cooperate with them. Jeffries's second attorney also told the trial court that Jeffries had refused to participate in discussions, except to threaten the attorney, and that he even refused to tell the attorney his real name.[3] In addition, Jeffries's second attorney told the trial court that Jeffries was trying to manipulate the system. The attorney explained that Jeffries's requests for another lawyer and his refusal to put on civilian clothes for trial were "another gambit to get out of trial."

The trial court's lengthy discussion with Jeffries about whether he was refusing to put on street clothes provides further evidence from which the trial court could have reasonably concluded that Jeffries would have disrupted the trial if allowed to represent himself. Jeffries was evasive when the trial court asked about his refusal to wear street clothes. He first stated that he had never been brought clothes. He would not give the court a straight answer about whether he refused to take the clothes, instead repeatedly saying that he had not seen the clothes. He admitted that the jail had offered civilian clothes to him. He disputed with the deputies whether he had signed a written refusal to change clothes, even after further discussion took place off the record. Finally, when a deputy asked Jeffries if he would change into clothes if they were offered to him, "yes or no," Jeffries avoided answering directly, saying "it don't matter at this point in time." The trial court asked him again, "Do you want it or not? Tell me yes or no." Jeffries shook his head, and then upon prompting, finally stated "no" for the record. Jeffries's evasiveness when asked direct questions and his arguing with the deputies and the trial judge required an excessive amount of the trial court's time to address one simple question.

---

[3] Jeffries had been indicted with an AKA of Michael Young.

7

Viewing the evidence in the light most favorable to the trial court's ruling, we conclude that Jeffries's two requests for new attorneys made a few days before each of his trial settings, his lack of cooperation with both attorneys, and his argumentativeness when questioned by the trial court about his refusal to put on street clothes suffice to support an implied finding by the trial court that Jeffries's request to represent himself was made with the intent to delay or disrupt trial.[4] Accordingly, we conclude that Jeffries's right to self-representation did not attach. Therefore, the trial court did not abuse its discretion by denying Jeffries's request to represent himself at trial. We overrule Jeffries's sole appellate issue.

---

[4] Although not part of our analysis of whether the trial court impliedly found that Jeffries's request was made with the intent to disrupt or delay trial or that his self-representation would actually disrupt trial, we note that Jeffries was in fact disruptive during trial. During Jeffries's testimony, another lengthy exchange between the trial court and Jeffries occurred after the trial court excused the jury so that the court could explain to Jeffries that he could not talk at the same time as other people because the court reporter can only record one person speaking at a time. When the trial court asked Jeffries if he understood this rule, Jeffries said he did not, and upon further explanation from the court, continued avoiding the question. Instead, he stated that he wanted to speak his mind and tell his side of the story, that he still wanted to fire his attorney, and that he wanted to know why his case was being heard by the visiting judge instead of the sitting judge. He questioned the judge's authority and interrupted the judge numerous times while the judge was explaining why Jeffries had to follow the rules of the court. The trial court eventually had to send Jeffries out to the holding cell, and when Jeffries returned, the trial court informed him that if he further violated the court's rules, he would hold Jeffries in contempt.

Jeffries was also disruptive during the punishment phase of trial. When testifying before the jury, he again raised the issue of why the visiting judge was presiding instead of the sitting judge and required the court to explain the issue to the jury. Jeffries also told the judge that the judge needed to explain to the jury why Jeffries's motions had not been heard or granted and that Jeffries had tried to fire his attorney. He also refused to answer the prosecution's single cross-examination question. He demanded instead that the prosecutor show the indictment to the jury and argued with the trial judge when the judge ordered him to answer the question. Jeffries's actual disruptive behavior at trial illustrates the reality of what the trial court impliedly found at the outset of trial—that Jeffries's conduct, including his request for self-representation, was made with the intent to disrupt or delay trial.

## CONCLUSION

Having determined that the trial court did not abuse its discretion by denying Jeffries's self-representation request, we affirm the trial court's judgments.

_____

Scott K. Field, Justice

Before Chief Justice Jones, Justices Goodwin and Field

Affirmed

Filed:   December 18, 2013

Do Not Publish

9